FILED
2024 Oct-17 PM 06:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

TRACI JONES, et al.,

*Plaintiffs*,

v.

JEFFERSON COUNTY
BOARD OF EDUCATION, et al.,

*Defendants*.

Civil Case No. 2:19-cv-01821

# ORDER

Plaintiffs Traci Jones, Robert Sellers, and Greater Birmingham Ministries have filed an emergency motion to enforce the remedial order in this case. (Doc. 109; *see* Doc. 21). The plaintiffs' motion concerns a process undertaken by the Alabama Secretary of State "to [r]emove [n]oncitizens [r]egistered to [v]ote" from voter rolls and the impact of the implementation of the removal process on the upcoming election of members of the Jefferson County Board of Education. (Docs. 109, 109-1). In December 2019, the Court entered the remedial order in this case based on the finding that the at-large multimember district process for selecting four of the Board's five members violated Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fourteenth Amendment. The at-large process had been in place in Jefferson County since 1975. (Doc. 21, pp. 3, 9).

To cure the statutory and constitutional violations, the Court adopted a remedial map which divided the multimember district into four single-member districts, and the Court held that the defendants, the Board and the Probate Judge of Jefferson County, Alabama, must use the remedial map for elections held after 2020. (Doc. 21, pp. 9-10). The Court held that the defendants must use the remedial map to elect Board members for Districts 1 and 2 in 2024. (Doc. 21, pp. 9-10). Through December 31, 2031, the remedial order prohibits the enforcement of changes to voting practices or procedures relating to "which citizens are eligible to participate in voting for the Board" absent "permission of the Court pursuant to 52 U.S.C. § 10302(c)." (Doc. 21, pp. 11-12).

In their emergency motion, the plaintiffs ask the Court to direct the Jefferson County Probate Judge to comply with the remedial order by submitting for review under Section 3(c) of the Voting Rights Act the Secretary of State's recent program concerning voter eligibility because implementing the program affects "'which citizens are eligible to participate in voting'" for candidates for the Jefferson County Board of Education. (Doc. 109, p. 1) (quoting Doc. 21, pp. 11-12 (citing 52 U.S.C. § 10302)). The plaintiffs also ask the Court to prohibit the Probate Judge from implementing or enforcing the program until the Section 3(c) review mandated by the remedial order is complete, and the plaintiffs ask the Court to require the Probate Judge to restore affected individuals to the active voter list pending a decision

following preclearance review. (Doc. 109, p. 2). The plaintiffs report that, ahead of the November 2024 general election for Board districts 1 and 2, the Probate Judge helped move approximately 555 people on the county voter rolls to "inactive" status pursuant to the Alabama Secretary of State's "[p]rocess to [r]emove [n]oncitizens [r]egistered to [v]ote" from voter rolls. (Doc. 109-1, pp. 1-2; Doc. 109-2, p. 1). The plaintiffs note that a press release announcing the Secretary's voter removal process states that "it is possible" that removed individuals include U.S. citizens. (Doc. 109-2, p. 2). The plaintiffs contend that the program likely has a discriminatory effect in violation of Section 3(c) because "racial and language minorities are overrepresented among the 12,084 Alabamians who became naturalized citizens" between 2019 and 2022. (Doc. 109-1, p. 3) (citing Doc. 109-6) (Office of Homeland Security statistics regarding persons naturalized in the State of Alabama).

The Probate Judge is the chief election official for Jefferson County. ALA. CODE § 17-1-3(b). As such, he must provide an official list of registered voters for Board elections, assist purged voters in returning to the list, canvass ballots, and report official election results. *See, e.g.*, ALA. CODE §§ 17-1-2(6), (14); ALA. CODE § 17-11-11(a); ALA. CODE § 17-4-8; ALA. CODE § 17-4-13. The plaintiffs filed their emergency motion because the attorney for the Probate Judge notified them that although the removal process was a change subject to the remedial order, the Probate Judge did not plan to submit the process for voter removal for Section 3(c) review

per the order. (Doc. 109-1, p. 4). The plaintiffs note that in separate, consolidated actions, private plaintiffs and the United States have sought to enjoin statewide implementation of the process for voter removal. (Doc. 109-1, p. 4) (citing *Ala. Coal. for Immigrant Justice v. Allen*, No. 2:24-cv-01254-AMM (N.D. Ala.), and *United States v. Alabama*, No. 2:24-cv-01329-AMM (N.D. Ala.)).

On October 9, the Court directed "[a]ny defendant who opposes the plaintiffs' emergency motion" to "file written opposition." (Doc. 110; *see also* Doc. 111). On October 11, the Board's attorney sent an email to the Court in which he stated that, after "speaking with counsel for the other parties," "no party plans to file an objection or any other response to the emergency motion."

Based on the plaintiffs' motion and exhibits and the parties' representations concerning the emergency motion, the Court concludes that the Probate Judge's implementation of the Secretary's voter removal process is a change affecting "which citizens are eligible to participate in voting for the Board" and is subject to the remedial order in this case. (*See* Doc. 21, pp. 11-12). Because the Probate Judge has not complied with the order by submitting this change affecting voter eligibility for review under Section 3(c) of the Voting Rights Act, remedial relief is appropriate, so the Court grants the plaintiffs' motion. *See Young v. Fordice*, 520 U.S. 273, 291 (1997); *Morales v. Handel*, No. 1:08-CV-3172, 2008 WL 9401054, at *9-10 (N.D. Ga. Oct. 27, 2008) (three-judge court); *see also McMillan v. Escambia Cnty.*, 559 F.

Supp. 720, 727-28 (N.D. Fla. 1983) (relying on Section 5 caselaw to interpret Section 3(c)).[1]

Accordingly, the Court orders as follows:

1. On or before **October 23, 2024**, the defendant Probate Judge, in cooperation with his agents and all persons acting with him or on his behalf, shall submit all relevant information concerning implementation of the Secretary's voter removal process in Jefferson County to either the Court or the U.S. Department of Justice for review pursuant to 52 U.S.C. § 10302(c).

    a. Counsel for the Probate Judge and the plaintiffs shall meet and confer and file a joint status report on **October 21, 2024** in which the parties shall state whether the Probate Judge will request review

[1] In granting the plaintiffs' motion, the Court recognizes that on October 16, 2024 in consolidated case numbers 24-cv-1254 and 24-cv-1329, Judge Manasco preliminarily enjoined Alabama's Secretary of State from "continuing the program intended to systemically remove" the names of voters from voter registration lists. *Ala. Coal. for Immigrant Justice v. Allen*, No. 2:24-cv-01254-AMM (N.D. Ala.), Doc. 90, p. 2. The preliminary injunction in consolidated case numbers 24-cv-1254 and 24-cv-1329 does not render the plaintiffs' request for preclearance review moot because the preliminary injunction expires on November 6, 2024, meaning that on the current record, the Secretary of State's program is suspended for fewer than 30 days, and the program is suspended for a reason other than Section 3(c) preclearance. *Allen*, No. 2:24-cv-01254-AMM, Doc. 90, p. 2 (citing the 90 Day Provision of the National Voter Registration Act as the basis for the preliminary injunction).

The decision to enjoin a change pending preclearance does not require an evaluation of the change's potential for discrimination. "It is change that invokes the preclearance *process;* evaluation of that change concerns the *merits* of whether the change should in fact be precleared." *Young*, 520 U.S. at 285 (italics in *Young*).

by this Court or by the DOJ; identify the information, documents, and other data necessary for the Court or the DOJ to evaluate the voter removal process for preclearance; explain steps taken by the parties to comply with this order; and provide any relevant information concerning the status of the implementation of the preliminary injunction in *Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-01254-AMM (N.D. Ala.) and *United States v. Alabama*, No. 2:24-cv-01329-AMM (N.D. Ala.), and any other relevant information, data, or documents related to this Court's order or implementation of the voter removal process in Jefferson County.

b. On or before **October 23, 2024**, the Probate Judge shall submit to the plaintiffs and the Court or the DOJ all information necessary to evaluate whether the removal process complies with Section 3(c) including, but not limited to, the list of removed or inactivated voters; data, documents, or other evidence regarding the race and citizenship status of such voters; the reliability of the program's process for identifying purportedly ineligible voters; and a sufficiently detailed description of the steps taken by the Probate Judge or anyone working with him to implement the program.

c. If the Probate Judge chooses to submit the Program to the DOJ, he shall request expedited review, 28 C.F.R. § 51.34, and a response from the DOJ by noon CST on **October 29, 2024**. *See Wesch v. Hunt*, 785 F. Supp. 1491, 1501 (S.D. Ala. 1992) (three-judge court).

2. Unless and until the Secretary of State's voter removal process receives preclearance from this Court or the DOJ under Section 3(c), the Probate Judge of Jefferson County and his agents and all persons acting with him are prohibited from implementing, administering, commencing, or otherwise continuing the removal process or any other related procedure or practice involving the removal, "inactivation," or purging of registered voters who, before the implementation of the program, were eligible to vote in elections for candidates for the Board of Education. The defendants:

   a. must ensure that no later than 5 p.m. CST **on October 23, 2024**, all individuals on the list of removed or inactivated voters are restored to "active" status on the official list of eligible voters for Board of Education elections, except those individuals who have provided affirmative evidence of noncitizen status or who have voluntarily removed their name from the registration list;

   b. must rescind all voter removal letters sent (*see* Doc. 101-5); and

c. must provide individualized notice to the persons on the list of removed or inactivated voters, except those who have provided individualized, affirmative evidence of noncitizen status or who have voluntarily rescinded their registration, that they are active voters who may cast a regular ballot in all elections for the Board of Education, provided that the notices clearly state that only eligible citizens may register or vote in any election. To reduce potential confusion, the Probate Judge for Jefferson County shall coordinate individualized notice with notice mandated by the preliminary injunction in consolidated case numbers 24-cv-1254 and 24-cv-1329.

3. Nothing in this order affects or is contrary to federal and state laws prohibiting noncitizens from voting.

4. Nothing in this order prohibits the challenge or removal of voters from the active or inactive registration list for Jefferson County based on state or federal law independent of the Secretary's removal process or on a reliable and individualized assessment that a registered voter is not a citizen, provided that such removal or challenge shall not be based on the Secretary's removal process or any information obtained or otherwise derived from the program or related practices and procedures.

All aspects of prior orders in this case, (Docs. 21, 108), shall remain in effect. The Clerk of Court shall please TERM Doc. 109.

**DONE** and **ORDERED** this October 17, 2024.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE